675 P.2d 422

STATE of New Mexico,
Plaintiff-Appellee,

v.

Archie MIRANDA, Defendant-Appellant.

No. 7125.

Court of Appeals of New Mexico.

Dec. 1, 1983.

Paul Bardacke, Atty. Gen., William Lazar, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Janet Clow, Chief Public Defender, Ellen Bayard, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

OPINION

WALTERS, Chief Judge.

Defendant appeals from conviction as an habitual offender, and we affirm.

The issues on appeal, all relating to the alleged first prior conviction, were whether Count I (alleging defendant's guilty plea to and conviction of attempted burglary in 1977) should have been dismissed; whether that count should have been submitted to the jury, since defendant contended his plea was not intelligently and knowingly made; and whether the jury should have considered the evidence on his claim that the prior conviction was invalid.

Other issues presented in the docketing statement, but not briefed, are deemed abandoned. *State v. Vogenthaler*, 89 N.M. 150, 548 P.2d 112 (Ct.App.1976).

## I. Motion to dismiss Count I.

Before trial, defendant moved to dismiss the first count, attaching to his motion copies of a withdrawal by J.C. Robinson, the district attorney, and an entry of appearance by V. Lee Vesely as special prosecutor on the charge outlined in Count I. The basis for substitution of those attorneys was Robinson's comprehensive consultation with defendant regarding the charge, before Robinson became district attorney, for the purpose of representing defendant at trial.

Notwithstanding the appointment of a special prosecutor, *compare State v. Chambers*, 86 N.M. 383, 524 P.2d 999 (Ct. App.1974), defendant contends that there remained a conflict of interest and, being unaware of it, defendant could not waive it by pleading guilty. He claims a conflict of interest attaching to the State because (1) Vesely did not act independently in the case but was subject to Robinson's orders; and (2), that he was completely unaware of Robinson's status as district attorney as well as of Robinson's participation in the case. In contrast, the trial court found:

7. Miranda and his father, Armando B. Miranda, were both aware that J.C. Robinson had been appointed District Attorney.

\* \* \* \* \* \*

17. At all times during the negotiation and prosecution of this matter Miranda, his family, and his lawyer were fully and completely aware that J.C. Robinson ... had been appointed and had assumed his duties of District Attorney. They were also fully aware that J.C. Robinson had recused himself from any further participation in the case and that the case was being handled for the State of New Mexico by V. Lee Vesely as Associate Counsel.

18. During the prosecution of Grant County Case No. CR 77–122 V. Lee Vesely acted independently and exercised independent judgment on behalf of his client reporting only the progress of the case to the District Attorney J.C. Robinson and using only the secretarial services of the District Attorney's Office.

Our review is confined to determining whether these findings are supported by substantial evidence. *State v. Garcia*, 98 N.M. 186, 646 P.2d 1250 (Ct.App.1982).

To demonstrate Robinson's continued participation in the case, defendant relies on his counsel's initial letter to Robinson requesting a plea bargain, together with Robinson's notations thereon indicating "attempt burg dwell/4th." Defendant ultimately pleaded to the charge indicated in the handwritten notes rather than to the greater felony charged at the time. Defendant further relies on Vesely's testimony, based on Vesely's notes to his file, indicating that defense counsel wanted certain plea concessions and that Vesely said he would have to consult with Robinson and advise defense counsel later. When asked if he did in fact consult Robinson, Vesely answered, "I suppose I did."

However, Robinson testified that after he filed his recusal, he did nothing further with the case, "to his knowledge." He had "no recollection" of having talked to Vesely or defense counsel about the case. Defendant's counsel's "recollection or knowledge" after Robinson recused himself was that Robinson had nothing further to do with the matter. Defendant's argument is that Robinson's testimony concerning "no recollection" does not overcome Vesely's testimony and his notes indicating that he had consulted with Robinson. *See State v. Chavez*, 84 N.M. 247, 501 P.2d 691 (Ct.App. 1972) (the fact that something is not remembered is not a denial that the thing occurred). But there was more in the way of evidence to controvert defendant's contention than simple non-recall of the events. Vesely explained that what he meant by "consult," and what he did with Mr. Robinson, was to keep him informed of what was happening. The totality of the evidence is amenable to the trial court's findings that Robinson did not participate in the case and that Vesely acted independently.

▇▇▇ To show defendant's lack of knowledge regarding Robinson's status, defendant urges that he himself did not testify, and no one who did testify had personal knowledge of defendant's awareness. There are two answers to this contention: First, defendant himself requested a finding to the effect that both he and his father were aware of Robinson's appointment as district attorney. A trial court ruling on the issue of defendant's awareness, therefore, was not fairly invoked. NMSA 1978, Crim., Child.Ct., Dom.Rel. & W/C App.R. 308 (Repl.Pamp.1983). *See Cochran v. Gordon*, 77 N.M. 358, 423 P.2d 43 (1967). Second, even if defendant did not know about the possible conflict of interest, that fact is irrelevant. *Baird v. State*, 90 N.M. 667, 568 P.2d 193 (1977), holds that by specifically agreeing to paragraph 4 of the plea entered into at the time, as defendant did, defendant waived any motions or objections that he might thereafter assert. In this case, as in *Baird*, there is no allegation that the lack of knowledge of the possible conflict made the plea involuntary. Rather, defendant's contention is that he personally had to know about the possible conflict in order to waive it. This is not true in the context of waivers by a plea of guilty. *Baird; State v. Raburn*, 76 N.M. 681, 417 P.2d 813 (1966).

The trial court ruled that defendant's claim was stale under *State v. Mata*, 88 N.M. 560, 543 P.2d 1188 (Ct.App.1975). In deciding that *Mata's* claim was stale, this Court held that any appearance of unfairness because of the prosecutor's conflict was dissipated by an evidentiary hearing. Here, defendant's claim, even after the evidentiary hearing, is still based on the appearance of unfairness. The trial court's findings that Robinson did not participate in the case, being supported by substantial evidence, establish that there was no actual unfairness. Consequently, the State was not prohibited from using Count I in the habitual proceedings. *Compare State v. Dalrymple*, 75 N.M. 514, 407 P.2d 356 (1965) (defenses to habitual charges are such as provide grounds for collateral relief). This issue was resolved against defendant, and there was sufficient evidence to sustain that resolution.

## II. Voluntary, Knowing, and Intelligent Plea.

Defendant claims that because his counsel did not inform him of the collateral consequences of a deferred sentence, his plea was involuntary and made without the effective assistance of counsel; consequently, Count I could not be used to enhance the sentence. It was undisputed that defendant's counsel advised him that upon successfully completing probation, the conviction which formed the basis of Count I would be "wiped out" or dismissed.

Defendant raised this issue in the trial court by attempting to question witnesses in front of the jury on the facts concerning his counsel's advice. When the State's objections were sustained, he tendered the facts to the court. Following the last tender of proof, defendant argued:

*Defense Counsel:* That concludes my offer of proof, your honor.

*The Court:* All right, sir. [I'm] going to—

*Defense Counsel:* I'm familiar, of course, with this case of *State v. Martinez* but I maintain here, your honor, once it's raised, in that case we do have a question of voluntariness and knowingly making a confession so as to bring it under the *Boykin v. United States* case. I don't think the constitutional aspects of the confession, or in the Martinez case, was ever considered and we are raising the constitutional aspects at this present time.

*The Court:* A higher court will correct me if I'm wrong but I'm going to deny the offers of proof.

Earlier, defendant had moved the court to exclude Count I from the jury's consideration because there was no factual basis for the charge of attempted burglary. Counsel also explained in opening statement, his defense of invalidity.

The State initially argues that because defendant never specifically requested the trial court's ruling as a matter of law on the validity of the prior conviction, defendant waived the issue on appeal. It appears, indeed, that defendant's main thrust was to get the evidence of invalidity in front of the jury for their resolution. Defendant's final argument, however (reproduced above), cites the *Martinez* case [*State v. Martinez*, 92 N.M. 256, 586 P.2d 1085 (1978)], which holds that invalidity is not a question for the jury but, rather, is one for the court to decide. Defendant concluded his argument by saying that he was raising the "constitutional aspects" at the time. We give defendant the benefit of the doubt, and decide the issue on its merits.

Thus, the question is: Must a defendant be informed of all collateral consequences of his plea, such as its use in a subsequent habitual proceeding, in order to make the plea voluntary, knowing, and intelligent? The authorities uniformly answer this question in the negative. *Commonwealth v. Englert*, 311 Pa.Super. 78, 457 A.2d 121

(1983). *See also United States v. Garrett*, 680 F.2d 64 (9th Cir.1982); *Wright v. United States*, 624 F.2d 557 (5th Cir.1980); *United States v. Keefe*, 621 F.2d 17 (1st Cir.1980); *United States v. Lambros*, 544 F.2d 962 (8th Cir.1976), *cert. denied*, 430 U.S. 930, 97 S.Ct. 1550, 51 L.Ed.2d 774 (1977); *Cuthrell v. Director, Patuxent Institution*, 475 F.2d 1364 (4th Cir.1973), *cert. denied* 414 U.S. 1005, 94 S.Ct. 362, 38 L.Ed.2d 241 (1973); *United States v. Sambro*, 147 U.S.App.D.C. 75, 454 F.2d 918 (1971); *People v. Sirianni*, 89 A.D.2d 775, 453 N.Y.S.2d 485 (1982); *State v. Cameron*, 30 Wash.App. 229, 633 P.2d 901 (1981); *People v. Heinz*, 197 Colo. 102, 589 P.2d 931 (1979); *Hobby v. State*, 499 S.W.2d 956 (Tenn.Cr.App.1973).

The above decisions follow *Brady v. United States*, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970), in which the Supreme Court undertook to restate the standard governing voluntariness of guilty pleas. Quoting from a Fifth Circuit decision, the Court said that "[a] plea of guilty entered by one fully aware of the *direct* consequences * * * must stand." 397 U.S. at 755, 90 S.Ct. at 1472, 25 L.Ed.2d at 760 [emphasis added]. *United States v. Sambro* expressly noted that the Court had used the word "direct" in *Brady*, thereby excluding collateral consequences from the standard. *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), did not require any advisement concerning collateral consequences, either. *See Hobby v. State*. The rationale behind these cases is that there exists a right to assume that defendants will not be guilty of a subsequent offense but will be law-abiding persons in the future. *Fee v. United States*, 207 F.Supp. 674, 676 (W.D.Va.1962); *People v. Heinz*. Applying this universal rule, defendant's point lacks merit.

■ Additionally, we note that New Mexico, as well, has denied a right to challenge a plea bargain in certain circumstances. *State v. Lord*, 91 N.M. 353, 573 P.2d 1208 (Ct.App.1977), bars defendant from any claims attacking a bargained-for deferred sentence. *Lord* held that defendant

must disclose to the trial court, upon questioning at the plea proceeding, his understanding of any promises made concerning the disposition. *State v. Lucero,* 97 N.M. 346, 639 P.2d 1200 (Ct.App.1981), *cert. quashed,* 98 N.M. 51, 644 P.2d 1040 (1982), modified that disclosure requirement when mandatory questions have not been asked by the trial court. Here, however, the trial court made the required inquiries that preclude defendant's right to assert any issue concerning the ramifications of the deferred sentence. The plea and disposition proceedings clearly show that although the State had no objection to the deferred sentence, the sentence to be imposed was to be in the court's discretion.

The trial court specifically inquired whether "anybody" had made "any promises"—to which defendant answered "No." Defendant knew the penalties; no one promised a suspended sentence or probation. Not having told the trial court upon specific questioning that he expected a deferred sentence, the record of which would be wiped out, defendant may not now raise such an issue. *Lord.*

**III. Jury Question.**

Defendant finally contends that the validity of Count I should have been submitted to the jury. He recognizes that *State v. Martinez* and *State v. Gallegos,* 91 N.M. 107, 570 P.2d 938 (Ct.App.1977), are to the contrary. He asks that we overrule these cases. This Court has no power to do so, *Alexander v. Delgado,* 84 N.M. 717, 507 P.2d 778 (1973), particularly in the absence of some argument disclosing why *Martinez* is or should be inapplicable. This point is without merit.

*Mata* and the presence of sufficient evidence control the first issue raised. The plethora of cases cited, with regard to the validity of the plea when defendant claims lack of knowledge of collateral consequences, disposes of defendant's Issue II. *Martinez* controls Issue III. We therefore affirm defendant's conviction as an habitual offender, and the sentence imposed thereon.

IT IS SO ORDERED.

LOPEZ and DONNELLY, JJ., concur.